

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 31, 2010**                                                          **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOHN F. LANGFORD, | § | CASE NO. 09-20316-RLJ-7 |
| | § | |
| DEBTOR | § | |

_____

| | | |
|---|---|---|
| RONALD D. HINK, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | ADVERSARY NO. 09-02018 |
| | § | |
| JOHN F. LANGFORD a/k/a | § | |
| LANGFORD & ASSOCIATES a/k/a | § | |
| LANGFORD FUNDING and | § | |
| | § | |
| KENT DAVID RIES, | § | |
| CHAPTER 7 TRUSTEE | § | |
| | § | |
| DEFENDANTS | § | |

**MEMORANDUM OPINION**

The Court considers the motion for partial summary judgment of the plaintiff, Ronald D.

Hink ("Hink"), and the motion for summary judgment of the defendant Kent Ries, chapter 7

trustee in the bankruptcy case of John F. Langford ("Ries" or "the trustee"). Hearing on the motions was held on February 16, 2010. Hink seeks partial summary judgment on his claims that funds held by the trustee are subject of an express trust or, alternatively, a constructive trust, either or both of which arose from Hink's dealings with John F. Langford ("Langford"), the chapter 7 debtor in the underlying bankruptcy case.[1] Ries contends that the relationship between Hink and Langford is that of a creditor-debtor and nothing more; therefore, summary judgment should be granted in his favor on Hink's claims of express trust and constructive trust.

Upon consideration of the pleadings, the summary judgment evidence, and the arguments of counsel, the Court denies Hink's motion for partial summary judgment and grants the trustee's motion for summary judgment.

**Background**

1. The Bankruptcy Case

Langford's bankruptcy case was initiated by an involuntary petition under chapter 7 filed on May 22, 2009. Langford initially contested the involuntary petition by the answer he filed on June 16, 2009, but amended such answer on July 15, 2009, stating that the involuntary petition was unopposed. An order for relief was therefore issued and entered on July 20, 2009. Ries was appointed as the chapter 7 trustee in the bankruptcy case.

2. Facts from Summary Judgment Evidence

In late April 2009, Hink sent two checks, one in the amount of $18,636.50, the other in the

---

[1] The named defendants are John F. Langford a/k/a Langford and Associates a/k/a Langford Funding and Kent David Ries, the chapter 7 trustee. The Court is advised that Langford was charged criminally for conduct relating to his services as an investment advisor. The Court also notes that Langford has not filed an answer or other response in this adversary proceeding.

amount of $110,000.00, to Langford for the purpose of Langford investing the funds on Hink's behalf in commercial real estate through an investment company apparently owned and operated by Langford called Langford Funding. Langford received the two checks and deposited them in his bank account. Hink expected the investments to be "semi-liquid", meaning he could, on no more than a few days notice, have his investments liquidated, at least in part, with the cash returned to him. He also expected to receive interest on the investments of 6% to 7%. He understood he would have no management influence over the specific investments, and he did not specifically expect or direct that his funds (or the investments) be segregated. Hink did not refer to his arrangement with Langford as a trust; indeed, he did not know what a trust is. Hink and Langford did not create or sign any written instrument evidencing their arrangement. Hink knew Langford because Hink had, in October and November of 2008, used Langford to assist him in rolling over approximately $70,000.00 in retirement funds into an annuity with Jackson National Life Insurance Company. Hink had initially heard of Langford from a television commercial. Hink is a crop duster and has no particular expertise regarding investments or the formation of trusts under the law.

As of the bankruptcy filing on May 22, 2009, Langford had not purchased any real estate investments for Hink. Langford's bank account at First Bank Southwest, NA, for the period from April 17, 2009 through May 18, 2009, had a beginning balance of $4,611.19 on April 17, and it had a balance of $105,512.77 on May 18, 2009. During this time period, deposits to Langford's account totaled $195,864.57, of which $128,636.50 was attributable to Hink's two checks. Withdrawals from Langford's account totaled $94,962.99. The funds remaining in the account, $105,526.07, were turned over to Ries as trustee on August 24, 2009, and are presently held by

Ries. In Langford's bankruptcy case, over 80 claimants have filed claims, totaling in excess of $6.8 million.

## Discussion

1. Introduction

In this case, Hink contends that the facts establish that either an express trust or a constructive trust was created. If successful on this argument, Hink benefits because if a trust exists, equitable title to the funds presently held by the trustee that can be labeled as the trust *res* belongs to Hink and would therefore not belong to the bankruptcy estate. If there is no express trust or constructive trust and the relationship between the parties is, as the trustee asserts, that of a creditor (Hink) and debtor (Langford), the funds held by the trustee are property of the bankruptcy estate subject to claims of all creditors of the bankruptcy estate. The resolution of this issue can therefore have a dramatic affect on Hink's recovery on his claim against Langford.[2]

2. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

---

[2] The Court assumes there is no real dispute between the parties concerning whether Hink has a claim against Langford for the $128,636.50. The issue, as stated, is whether Hink has a claim to the funds presently held by the trustee as trust funds.

motion. *Anderson*, 477 U.S. at 255. A factual dispute bars summary judgment when the disputed fact is determinative under governing law of the issue before the court. *Id*. at 250. The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

3. Express Trust

A bankruptcy court must look to state law to determine if a trust relationship exists. *See In re Holdaway*, 385 B.R. 767, 775 (Bankr. S.D. Tex. 2008). In Texas, an express trust must be formed by one of the methods set forth in Texas Property Code § 112.001. TEX. PROP. CODE ANN. § 112.001 (Vernon 2007). The Texas Trust Code contains five methods for creating a trust:

(1) a property owner's declaration that the owner holds the property as trustee for another person;
(2) a property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person;
(3) a property owner's testamentary transfer to another person as trustee for a third person;
(4) an appointment under a power of appointment to another person as trustee for the donee of the power or for a third person; or
(5) a promise to another person whose rights under the promise are to be held in trust for a third person.

*Id*. The next essential requirement for the creation of an express trust is the separation of legal and equitable title. TEX. PROP. CODE ANN. § 112.034; *see Perfect Union Lodge No. 10, A.F. and A.M., of San Antonio v. Interfirst Bank*, 748 S.W.2d 218, 220 (Tex. 1988) (stating the "separation of the legal and equitable estates in the trust property is the basic hallmark of the trust entity").

Finally, a trust may only be created if the settlor manifested an intent to create the trust. TEX. PROP. CODE ANN. § 112.002; *see also In re Estate of Berger*, 174 S.W.3d 845, 848 (Tex. App.—Waco 2005, no pet.).

No particular words are necessary to create an express trust, but an express trust will not arise unless the owner of the property has expressed an unequivocal intent to create a trust. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 438 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Hubbard v. Shankle*, 138 S.W.3d 474, 483-84 (Tex. App.—Fort Worth 2004, pet. denied). Similarly, the use of the words "trust" or "trustee" do not by themselves evidence an intent to create a trust; the settlor must still intend to create a trust. *Brelsford v. Scheltz*, 564 S.W.2d 404, 406 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). "A court cannot impose a trust where the parties have contemplated another relationship." *Chapman Children's Trust*, 32 S.W.3d at 438 (citing *Spiritas v. Robinowitz*, 544 S.W.2d 710, 715 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.)).

The critical issue here is whether the summary judgment evidence proves Hink's clear intent to create a trust. Though Hink submits that his delivery of the $128,636.50 to Langford and Langford's deposit of this sum in his bank account satisfied both the method of trust creation – an inter vivos transfer – and the required separation of legal and equitable titles, such acts are meaningful only if Hink intended to create a trust. Intent, therefore, is the indispensable element. In this regard, Hink did not subjectively or specifically intend to create a trust. He contends, rather, that his intent to create an express trust under the Texas Property Code may be inferred from his (and presumably Langford's) direct acts. For support, Hink relies on two bankruptcy cases from the Northern District of Texas, *In re Berry*, 174 B.R. 449 (Bankr. N.D. Tex. 1994)

(Akard, J., presiding) and *In re Rea*, 245 B.R. 77 (Bankr. N.D. Tex. 2000) (Felsenthal, J., presiding).

Both *Berry* and *Rea* are dischargeability cases with the courts considering whether the debt at issue must be declared nondischargeable under section 523(a)(4) of the Bankruptcy Code for the debtors' fraud while acting in a fiduciary capacity. *See Berry* at 453-54 and *Rea* at 87-88. Both cases note that a fiduciary relationship must arise out of a technical or express trust. *Id*. The *Berry* court, citing Texas law, stated that "[a]n express agreement, the direct acts of the parties, or a written instrument gives rise to an express trust." *In re Berry* at 454 (citations omitted). The *Rea* court cited *Berry* for the same proposition. *See In re Rea* at 87.

Hink has no express agreement or written instrument that creates a trust and therefore seizes on the statements in *Berry* and *Rea* regarding the creation of a trust through direct acts. In *Berry*, the court held that the plaintiffs had failed to show an intent to create an express trust, in large part because they offered no evidence of prior dealings between the plaintiffs and the debtor-defendant. *In re Berry* at 454. Hink contends, and perhaps correctly so, that an intent to create a trust may be manifested by prior dealings between the parties. But the mere fact that Hink had prior dealings with Langford does not itself establish a trust. The prior dealings of Langford facilitating Hink's rollover of investment funds into annuities provide no evidence of an express trust arising from the transactions under consideration here. The two deals are different; in addition, there is no claim made that the earlier dealings created a trust. *Berry* does not state that merely presenting evidence of prior dealings is sufficient to prove the so-called settlor's intent to create a trust. *See id*.

As stated, the court in *Rea* cited *Berry* for the proposition that the acts of the parties may

give rise to a trust relationship; in addition, also like *Berry*, the *Rea* court concluded that the acts of the parties fell short of satisfying the requirements for the creation of an express trust. *In re Rea*, 245 B.R. at 88. The court stated that the "parties had a relationship of trust and confidence," but the court did not state that this relationship of trust and confidence rose to the level of a trust relationship as contemplated by the Texas Property Code. *Id*. The court said that the parties "stood as principal and agent or as parties in a venture," not as trustee and settlor in a valid trust relationship. *Id*. The court found there was no separation of legal and equitable title because the equities purchased there with the plaintiff's money were carried in the plaintiff's name.[3]

Hink is essentially asking that the Court conclude that an express trust arose by default. The summary judgment evidence reflects that Hink transferred $128,636.50 to Langford to invest in commercial real estate. Hink expected to accrue interest at 6% to 7% on his investment and wanted the ability to withdraw a part (or perhaps all) of the investment on short notice (so it was "semi-liquid"). The purpose of the deal was not to have Langford simply deposit the funds in his bank account.

The Court is unable to draw any definitive conclusions regarding either the form of investment – whether stocks, bonds, or other – or how such investments were to be held – in Hink's name, Langford's name, Langford Funding's name, or other. Hink contends that legal and equitable title split because his funds ended up in Langford's bank account, hence Langford held legal title, and that equitable title must, therefore, rest with Hink. The act of Hink transferring the funds to Langford and Langford depositing the funds in his account did not,

---

[3] The debtor in *Rae* was a securities broker who lost over $69,000.00 of $100,000.00 that had been turned over to him by the plaintiffs, a husband and wife. The debtor incurred the losses in a risky day-trading venture.

however, fulfill Hink's intended purpose of Langford using the funds to make investments in real estate. In order to create a valid express trust in Texas, an inter vivos transfer of property to another person as trustee must be made, the settlor must express a clear intent to create a trust, and the legal and equitable title to the trust property must separate. No particular words are necessary to create a trust, but the settlor must have clearly evidenced his intent to transfer property to create a trust. Hink and Langford never mentioned the creation of a trust, they obviously have no documentation to evidence a trust, and their prior relationship reflects nothing beyond an investor/advisor relationship. As Hink has provided no evidence that the parties ever contemplated anything beyond an investment relationship and thus failed to prove that he, as settlor, intended to create a trust, Hink's motion for summary judgment on the express trust claim must be denied.

  4. <u>Constructive Trust</u>

In order to establish a constructive trust, the plaintiff must prove "(1) a breach of a fiduciary relationship or . . . actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable res." *In re Moore*, 379 B.R. 284, 297 (Bankr. N.D. Tex. 2007). The party seeking the imposition of the constructive trust must prove actual or constructive fraud. *Id*. Hink claims that since the trustee alleged fraud by Langford in the trustee's objection to Langford's exemptions, filed in Langford's bankruptcy case, the fraud element for a constructive trust is satisfied. While the factual allegation contained in the objection to exemptions may constitute an admission by the trustee in the main bankruptcy case, the statement is not conclusively binding on the trustee in this adversary. *See In re Schraiber*, 141 B.R. 1000, 1007 (Bankr. N.D. Ill. 1992); *see also In re Basin Res. Corp.*, 182 B.R. 489, 492 (Bankr. N.D. Tex.

1995). The bankruptcy court in *Schraiber* noted that "trustees must be free to handle each individual controversy separately in order to maximize the value of the estate." *In re Schraiber*, 141 B.R. at 1007. "Treating all the contested matters and adversary proceedings as one controversy and causing the statements made in one matter to be binding in all other matters would be inconsistent with this concept." *Id*. The Court will not infer from the allegations contained in the trustee's objection to exemptions that Hink has proven actual or constructive fraud by Langford. In addition, based upon the summary judgment evidence, the Court would not, as a matter of equity, impose a constructive trust in this case. "[B]ankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so." *See In re Haber Oil Co., Inc.*, 12 F.3d 426, 436 (5th Cir. 1994) (internal citation omitted).

     5. <u>The Trustee's Motion for Summary Judgment</u>

The Court has concluded that the summary judgment evidence fails to prove either an express trust or a constructive trust. Hink's failure to prove his claims forms the basis for the trustee's motion for summary judgment. Hink does not contend that additional facts exist or can be adduced to prove his claims. Hink has the burden on his claims. The Court concludes, therefore, that the trustee's motion for summary judgment must be granted.

### End of Memorandum Opinion ###